**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stephanie D Lee, | No. CV-20-01430-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff seeks judicial review of the Social Security Administration ("SSA") Commissioner's decision denying her application for SSA disability benefits.  Plaintiff filed her Opening Brief (Doc. 24) on April 12, 2021.  Defendant filed a Response Brief (Doc. 28) on June 11, 2021, and Plaintiff filed her Reply Brief (Doc. 29) on June 23, 2021. The Court has reviewed the briefs and Administrative Record (Doc. 21, "R.") and now affirms the Administrative Law Judge's ("ALJ") decision.

**I.     Background**

On August 18, 2015, Plaintiff protectively filed an application for a period of disability and disability benefits with an alleged onset date of January 1, 2011.  (R. at 18). An ALJ issued an unfavorable decision on October 1, 2019.  (R. at 15).  The Appeals Council denied Plaintiff's request for review.  (R. at 1).  This appeal followed.

The ALJ found that Plaintiff had the following severe impairments: "disorders of muscle, ligament, fascia; migraine, disorder of female genital organs, depression, and anxiety."  (R. at 21).  The ALJ also found that Plaintiff's long-term use of opioids was non-

severe, and that Plaintiff's asthma was non-severe because her smoking habit "suggests she is able to tolerate pulmonary irritants." (*Id.*)

The ALJ also found that Plaintiff's residual functional capacity ("RFC") permitted her to do light work, including certain postural maneuvers, but that her work should be limited to that which does requires consistent and regular tasks with no strict time limits. (R. at 23). In reaching this conclusion, the ALJ rejected some of Plaintiff's symptom testimony because it was not consistent with the Record. (R. at 24). He also assigned limited weight to opinions from Plaintiffs' treating physicians, Plaintiff's boyfriend, and Plaintiff's mother. (R. at 27). The ALJ concluded that Plaintiff was capable of performing past relevant work as a daycare worker. (R. at 28).

## II.   Standard of Review

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). If the ALJ commits a harmless error, the decision will not be reversed. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006).

To determine whether a claimant is disabled for purposes of the Act, the ALJ typically follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ

determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

## III.   Analysis

Plaintiff argues that the ALJ failed to properly consider medical opinions in formulating the RFC, that he improperly rejected Plaintiff's symptom testimony, that he improperly rejected lay witness testimony, and that he improperly relied on certain vocational testimony. The Court addresses each argument in turn.

### a.  Medical Opinions

Plaintiff argues the ALJ improperly weighted the opinions of Plaintiffs' treating physicians, Drs. Eric Foltz and David Engstrom. (Doc. 24 at 8). Generally, an ALJ weights a treating physician's opinion more heavily than a non-treating physician's opinion. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). An ALJ may discount a treating physician's opinion if it is "conclusory, brief, and unsupported by the record as a whole, or by objective medical findings." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (cleaned up). "When faced with contradictory opinions, the ALJ must give specific and legitimate reasons supported by substantial evidence in the record to reject a treating physician's opinion." *Belanger v. Berryhill*, 685 F. App'x 596, 598 (9th Cir. 2017). "Where an ALJ does not explicitly reject a medical opinion or set forth specific,

1    legitimate reasons for crediting one medical opinion over another, he errs." *Garrison v.*

2    *Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

3                    **i.    Dr. Eric Foltz**

4           Dr. Foltz is Plaintiff's treating neurologist.  (Doc. 24 at 8).  The Record contains a

5    questionnaire completed by Dr. Foltz in December 2018 that details Plaintiff's headaches.

6    (R. at 2525–28; 3640–43).  He diagnosed Plaintiff with migraines and chronic cluster

7    headaches, and he opined that Plaintiff would be incapable of even low stress jobs.  (R. at

8    2525, 2528).  If she did work, Dr. Foltz opined Plaintiff would need to take twenty- to

9    thirty-minute breaks four to five times in a regular eight-hour workday.  (R. at 2528).  He

10   referred Plaintiff for Botox therapy.  (*Id.*)  Treatment notes from August 2018 also indicate

11   that Dr. Foltz had referred Plaintiff to two different headache specialists, but she had not

12   yet seen them.  (R. at 3620).

13          The ALJ gave Dr. Foltz's opinion little weight because he "recounts what the

14   claimant tell[s] him about her headaches, but . . . his referrals never seem to result in her

15   seeing a headache specialist.  Further, the restrictions proposed in his questionnaire are

16   based solely on diagnoses of migraine and chronic cluster headache.  However, . . . the

17   medical records supports that claimant was receiving benefit from Botox injections

18   overall."  (R. at 27).

19          Plaintiff argues the ALJ's reasons for discounting Dr. Foltz's opinion are

20   insufficient.  She argues the ALJ failed to acknowledge that she was having insurance

21   "issues with the referral to the specialist" and that her most recent series of Botox

22   injections, in 2016, was administered at a time when Dr. Gurdesh Bedi noted Plaintiff still

23   had daily headaches.  (Doc. 24 at 10).  The ALJ's RFC did not contain any limitations

24   related to migraines, which Plaintiff argues is an error because, even with Botox, she was

25   still limited by migraines.  (*Id.*)

26          The Record shows that Dr. Foltz referred Plaintiff to two specialists.  Plaintiff stated

27   during her testimony that she has a "conflict" with one of them and that the "other stopped

28   contracting through my insurance, so now we're trying to get it to go through his doctor to

see if his, one of his other practicers [sic] can give me the Botox." (R. at 53). Plaintiff does not explain the nature of the conflict with the one specialist. In addition, the ALJ cited to multiple medical reports from 2012 to late 2016 indicating that Botox injections significantly improved her headaches. (R. at 24–25). For example, an August 10, 2015, report states Plaintiff was "getting good relief from Botox" for her migraines. (R. at 756). In a September 7, 2016, report, Plaintiff stated that she had responded well to Botox and was getting some relief for her headaches. (R. at 1067). The Court finds that this evidence is substantial and that the ALJ's reason to assign little weight to Dr. Foltz's opinion was supported by specific and legitimate reasons.

### ii.    Dr. David Engstrom

Dr. Engstrom is Plaintiff's treating doctor. (Doc. 24 at 11). The Record contains a "Physical Medical Source Statement" completed by Dr. Engstrom in 2017. (R. at 2597–2604). He opined that Plaintiff could only sit, stand, or walk for fewer than two hours in an eight-hour workday. (R. at 2603). The ALJ gave Dr. Engstrom's opinion little weight for several reasons. First, he noted that Plaintiff worked at a daycare for about three months in 2015. (R. at 27). In addition, the ALJ noted that Plaintiff was exercising regularly at least three times a week in 2017, and that Plaintiff testified to doing household chores, including yardwork. (R. at 27–28) (citing R. 267, 271, 303, 314–15, 1164).

Plaintiff argues the ALJ erred in affording this opinion little weight. She argues that her attempts to work at the daycare ended just when Dr. Engstrom opined her limitations began. (Doc. 24 at 12). Further, she argues it is unclear from the Record what kind of exercise Plaintiff performed and so it does not contradict Dr. Engstrom's opinion. (Doc. 24 at 12). Finally, Plaintiff argues that her housework does not mean she would be able to perform in a work setting. (*Id.*)

The Court finds that the ALJ did not err. The Record shows that Plaintiff worked at a daycare in 2015. Although Plaintiff argues Dr. Engstrom notes her limitation began after 2015, the alleged onset of Plaintiff's disabilities is January 1, 2011. (R. at 18). Evidence of Plaintiff's ability to work is further supported in the Record, which shows she

worked as a hostess, server, and bartender continuously from February 2011 through May 2015. (R. at 314). Plaintiff herself says she performed this work at a light exertional level "between 6 and 9 hours per day." (Doc. 28 at 2). The ALJ cited to this work history. (R. at 26). The Record also reflects that in 2017 Plaintiff did regularly exercise three times a week, although it does not specify what kind of exercise Plaintiff did. (R. at 1164). In addition, the Record shows she was regularly taking care of her daughter. (R. at 267). The Court finds that this evidence is substantial and that the ALJ's reasons to assign little weight to Dr. Engstrom's opinion were specific and legitimate. Overall, the Court finds the ALJ did not err in assigning weight to Plaintiff's treating physicians.

### b. Symptom Testimony

Plaintiff next argues that the ALJ erred by rejecting her symptom testimony. (Doc. 24 at 12). When an ALJ evaluates a claimant's symptoms, he considers symptom testimony, objective medical evidence, and other evidence in the record. 20 C.F.R. § 404.1529(c). An ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991); *see also* 20 C.F.R. § 404.1529(c)(2). However, the ALJ may "reject the claimant's testimony about the severity of [the] symptoms," provided that the ALJ also explains his decision "by providing specific, clear, and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488–89 (9th Cir. 2015).[1]

Plaintiff argues that the ALJ failed to "identify any specific records contrary to any of Lee's specific statements regarding her limitations." (Doc. 24 at 13). In a pain questionnaire, Plaintiff reported pain in her "pelvis, abdomen, back, neck, and shoulders. She described her pain as cramping brought on by standing, walking, lifting, twisting, reaching and any kind of pressure on the abdomen or pelvis." (R. at 24). She also claimed medication caused to her suffer from "nausea, heartburn, memory issues, weakness,

---

[1] The Court recognizes Defendant's argument that the "substantial evidence" standard for evaluating findings of fact is the proper and more deferential standard. (Doc. 18 at 9 n.5). Nonetheless, it also argues the ALJ supported his opinion under the more stringent "clear and convincing" standard. (*Id.*)

1  constipation, fatigue, extremity tingling and weakness." (*Id.*)

2      The Court finds that the ALJ did cite to specific records.  As discussed above, the

3  ALJ spent a great deal of time citing to records relating to Plaintiff's migraines showing

4  that Botox had served as a good treatment.  (R. at 25–26).  With respect to "claimant's

5  disorder of female genital organs," the ALJ cited to many records that he found did not

6  "support greater restrictions" than those assessed in the opinion.  (R. at 25).  For example,

7  the ALJ cited to an October 29, 2018, report written one week after Plaintiff had undergone

8  surgery, a robotic-assisted right oophorectomy.  (*Id.*)  The report states that although

9  Plaintiff complained of pelvic pain, she was "doing well."  (R. at 3473).  In addition, the

10  ALJ cited to numerous records regarding Plaintiff's muscle disorders, which he found show

11  Plaintiff "was generally in mild to no acute distress, and had normal range of motion and

12  strength or otherwise no musculoskeletal deficits with no focal neurologic deficit."  (R. at

13  26).  The ALJ also cited to many records indicating that Plaintiff "was receiving benefit

14  from pain medications."  (*Id.*)  In a November 30, 2018, medical report, Plaintiff stated

15  opioid treatment had relieved 40%-50% of her pain, which allowed her "to be more

16  functional in her day to day activities and routine."  (R. at 1131).  Finally, the ALJ cited to

17  records concerning Plaintiff's depression and anxiety and found they show she "had

18  appropriate or otherwise normal mood and affect."  (R. at 26).

19      The Court finds that the ALJ amply cited to the Record, which served as a

20  reasonable basis for his finding that Plaintiffs had a greater degree of functioning than was

21  alleged.  Therefore, the ALJ did not err in rejecting Plaintiff's symptom testimony.

22      **c.  Lay Witnesses Testimony**

23      Next, Plaintiff argues the ALJ improperly rejected lay witness testimony of her

24  mother and boyfriend.  The lay testimony of friends and family who observe a claimant's

25  symptoms and daily activities, "have routinely been treated as competent evidence."

26  *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).  If an ALJ discounts the testimony

27  of lay witnesses, the ALJ "need only give germane reasons" for doing so.  *Bayliss v.*

28  *Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  "One reason for which an ALJ may

1   discount lay testimony is that it conflicts with medical evidence." *Lewis v. Apfel*, 236 F.3d
2   503, 511 (9th Cir. 2001).

3           Here, Plaintiff's mother testified, in part, that Plaintiff cannot lift things or
4   concentrate, that she experiences pain and "struggles to get out of bed most days."  (R. at
5   294).  Plaintiff's boyfriend testified, in part, that, she "appears to not have energy to take
6   care of herself."  (R. at 363).  The ALJ gave "limited weight" to these lay opinions because
7   they were "based on casual observation of the claimant rather than objective medical
8   records."  (R. at 27).

9           Plaintiff argues that the ALJ's reason for discounting the testimony is improper
10  because lay witnesses necessarily conduct casual observations that are not comparable to
11  objective medical records.  (Doc. 24 at 16).  Defendant acknowledges the "ALJ's choice
12  of words may not have been idea," but, nonetheless, argues that even if the ALJ erred, such
13  error is harmless.  (Doc. 28 at 22).  For support, Defendant cites *Molina v. Astrue*, in which
14  the Ninth Circuit held where "lay witness testimony does not describe any limitations not
15  already described by the claimant" then the ALJ's "well-supported reasons for rejecting
16  the claimant's testimony" also apply to the lay witness testimony.  *Molina v. Astrue*, 674
17  F.3d 1104, 1117 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).
18  Defendant argues Plaintiff testifies to the same facts as her mother and boyfriend, and
19  because the ALJ properly rejected her own testimony, the same reasoning applies equally
20  well to the other opinions.

21          The Court finds that the ALJ erred by not providing a germane reason for
22  discounting the lay witness testimony.  Lay testimony is different in nature from "objective
23  medical records," and yet it still warrants consideration.  *See Sprague*, 812 F.2d at 1232.
24  Despite the fact of this error, the lay witness testimony does not describe any limitations
25  not already described by claimant.  Because the Court already found that the ALJ did not
26  err in rejecting Plaintiff's symptom testimony, the error in failing to properly give germane
27  reasons for discrediting lay witness testimony was harmless.  *See Molina*, 674 F.3d at 1117;
28  *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (holding that if

an ALJ provides clear and convincing reasons to reject a claimant's testimony, "it follows that the ALJ also gave germane reasons" for rejecting similar lay witness testimony).

### d. Vocational Testimony

Finally, Plaintiff argues that the ALJ erred by posing hypothetical questions to the vocational expert that did not include the limitations assessed by Drs. Foltz and Engstrom and described by the lay witnesses. (Doc. 24 at 17). When an ALJ poses a hypothetical question to a vocational expert, he must "set out *all* the limitations and restrictions of the particular claimant . . . ." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Only questions that are supported by the record have evidentiary value. *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). For reasons discussed above, the ALJ properly assigned little weight to the opinions of Drs. Foltz and Engstrom. In addition, the ALJ error in discounting the lay witness testimony was harmless because he properly discounted Plaintiff's own testimony. Therefore, he did not err by failing to ask the vocational expert questions that did not set out the limitations described by those sources.

## IV.   Conclusion

The Court finds no error in the ALJ's decision warranting reversal. Therefore, it is unnecessary to address whether this matter should be remanded for a computation of benefits.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment accordingly.

Dated this 7th day of March, 2022.


Honorable Diane J. Humetewa
United States District Judge